McCullough agt. Mayor.

# SUPREME COURT.

JAMES McCULLOUGH agt. THE MAYOR, &c., OF THE CITY OF NEW YORK.

*City courts — janitor of — how appointed — entitled to compensation.*

By section 65 of chapter 334 of the Laws of 1857, it is enacted, that the corporation of the city of New York shall furnish, at the expense of the city, all necessary attendance, &c., for the district courts.

By resolution of the common council, approved March 16, 1870, it was resolved, "that the justices assigned to each of the police and district courts of this city, be and they are hereby authorized and empowered to appoint a janitor of each of said courts, at an annual salary of $1,500."

Where a janitor was appointed by one of the civil justices, under this authority, *held*, that he was properly appointed and entitled to the compensation prescribed.

The duty imposed by the legislature on the corporation, in respect to such employment being executive and ministerial, it can be exercised as well through the authority given to the civil justices, as by a direct employment by the common council itself, and so long as the purposes of the act are accomplished, it is of no legal importance how the corporation performs the duty.

Such janitor is not a public officer, but a mere employe or servant, his duties being servile in their character; therefore, the provision of the charter (*chap.* 335 *of* 1873, *sec.* 97), by which it is provided that the salaries of all officers paid from the city treasury, whose offices now exist but are not embraced in any department, shall be fixed by the "board of apportionment," does not apply to this case.

The distinction between such a janitor and one having care of public buildings under the commissioner of public works, is pointed out by DANIELS, J., in *Bergen agt. The Mayor* (12 *N. Y. S. C. R.*, 243).

*General Term, First Department, January,* 1876.

*Before* DAVIS, *P. J.*, BRADY *and* DANIELS, *JJ.*

EXCEPTIONS ordered by the court to be heard in the first instance at the general term.

*Elliot Sandford,* for respondent.

The plaintiff was, prior to 1874, employed by the justice of the second district civil court, as janitor, and still is such janitor. He has been paid by the corporation defendant in full for his services to January, 1875; since that date, to June first, at the reduced rate of $1,200 per annum, and since June has received nothing; and there is due to him the sum of $625. The employment of the plaintiff was made under and in pursuance of a resolution of the common council of the defendants, authorizing the judges of the district courts to employ a janitor, at a salary of $1,500, payable monthly. The defendants' motion to dismiss the complaint was denied at the trial, and judgment directed for plaintiff for $655.55, exceptions to be heard at general term.

I. The learned justice, before whom this cause was tried, was right in denying defendants' motion to dismiss the complaint for the reason that the justice had no right to employ him, and that the common council could not delegate its power to the justices.

It is enacted (*sec.* 65, *chap.* 334, *Laws of* 1857), that "the corporation of the city of New York, shall furnish, at the expense of the city, all necessary attendants, fuel, lights, furniture, etc., for the district court."

1. A municipal corporation can act in the first instance only by its common council, board of trustees or governing body. The acts of this board are the acts of the corporation (*Lee* agt. *Village of Sandy Hill,* 40 *N. Y.,* 442, 451; 58 *N. Y.,* 639).

The duty imposed by the legislature, in its sovereign capacity on the corporation, to furnish attendants, was executive and ministerial. It was a liability, not political in its nature, nor in any way pertaining to its character as a muni-

cipal corporation. It was not a corporate duty (*Lloyd* agt. *The Mayor*, 5 *N. Y.*, 369).

The statute made no provision for the form of commissioning or employing these attendants, and the corporation was left to furnish them in any way it might deem desirable, and so long as the purpose of the act was accomplished, and the courts maintained, it was of no importance how the corporation performed the duty. Where the law commands a thing to be done, it authorizes the performance of whatever may be necessary for executing its commands (*Stief* agt. *Hart*, 1 *N. Y.*, 20). Compelled to act by agents as all corporations are, it made the judges of the several courts, by the resolution of March, 1870, its agents for this purpose.

2. The rule that delegated power cannot be delegated, applies only when the act to be done involves personal trust and confidence; and it is equally well established that a mere ministerial or executive authority may be delegated (51 *N. Y.*, 123; 13 *N. Y.*, 587).

It was held in the case of *Hall* agt. *Lauderdale* (46 *N. Y.*, 70), that a resolution of the board of supervisors of Livingston county, appointing a recruiting agent to procure enlistments of soldiers, authorized him to appoint sub-agents.

" The act," says ANDREWS, J., " is silent in respect to the means to be used by the supervisors to procure enlistments, and as to the methods by which the ultimate object in view should be secured    *   *   *    and, in the absence of any direction in the statute, it devolved, by necessary inference, upon the board of supervisors, to adopt such means and constitute such agencies, to accomplish the purposes of the act, as they might deem appropriate. The appointment of an agent, in general, carries with it all powers necessary, proper and usual, to effectuate the purposes of the appointment. The agent may use the ordinary and appropriate means in execution of the power given to him, and they are deemed to be comprehended within the authority, although not expressed    *   *   *    and, in view of the circumstances, and

in the absence of restrictive words, we are of opinion that the employment of sub-agents by the defendant, to assist in the business of recruiting, was within the authority conferred upon him, and a proper and necessary means in executing it " (46 *N. Y.*, 70):

By chapter 529 of the Laws of 1853, the judges of the superior, common pleas and marine courts, were vested with the powers of appointing attendants on those courts. By chapter 382 of the Laws of 1870, the power of appointing and removing attendants was conferred upon the comptroller. It was claimed, and at two successive general terms of this court so held, in the case of *Brennan* agt. *The Mayor*, that the section conferring such power upon the comptroller was unconstitutional. On appeal to the court of appeals it was held that: "If the attempted transfer of power from the courts to the comptroller was futile, as in contravention of the Constitution, the judges of the court might, nevertheless, acquiesce in the exercise of the power by that officer. The power, as lodged in the judges, was not judicial in its character, and did not affect the jurisdiction of the courts or the public interests. It was rather a franchise, personal in its character, and if by reason of doubt as to the validity of the law, or for any reason, they chose temporarily not to assert the right, but to accept the attendants appointed by the comptroller, they might lawfully do so, and the attendants thus accepted and adopted, became the attendants of the court, as well by the assent and employment of the courts as the formal designation by the comptroller. Courts and judges cannot, as we have recently held, divest themselves, at pleasure, of jurisdiction of judicial matters and causes, but they can waive the exercise of power, executive and ministerial in its character, in matters affecting only their own personal service and convenience, and accept the results of the action of others accomplishing the same purpose " (*Brennan* agt. *The Mayor, opinion of* ALLEN, *J., not reported*).

3. If the power of appointing attendants conferred upon

the judges was ministerial and executive in its character, and might be waived by them and exercised by others, it follows that, when under the full authority of a resolution, the judges of the district courts employed plaintiff, he was employed by the corporation. Even if he had been employed by the judge of the district court, without any prior authority, the acceptance of his services, and payment thereof by the corporation, constituted him an employe, properly employed by the corporation (*Hoyt* agt. *Thompson*, 19 *N. Y.*, 207; *Newton* agt. *Bronson*, 13 *N. Y.*, 587).

This latter case goes so far as to hold (DENIO, *J.*) that, although an executor cannot delegate his power to an agent, yet, when the contract has been made by the agent, the principal may render it valid by ratifying it, with full knowledge of the facts, and, in ratifying it, he exercises the personal qualities essential to the due execution of the trust.

The court of appeals having decided that the power of appointing attendants on courts by the judges was ministerial and executive, the plaintiff was employed by and furnished by the corporation under the principle that, whoever does an act by the medium of another is, in law, considered as doing it himself, *qui facit per alium facit per se.*

II. The defendants' counsel moved also to dismiss the complaint on the ground that the commissioner of public works of the defendants had now the sole and exclusive power to employ janitors, for the reason that the charter of 1870 had vested in him the care of public buildings.

The charters of 1857 and of 1870 contain precisely the same language in respect to the care of public buildings (*Sec.* 23, *chap.* 446, *Laws of* 1857; *sec.* 78, *chap.* 135, *Laws of* 1870).

The district court act of 1857 was enacted April 13, 1857, and the charter of 1857 was enacted the day after, April 14, 1857, and this power, now claimed to have been vested in the commissioner of public works, by the charter of 1870, was vested, if at all, in April 14, 1857. The enact-

ment of the charter of 1857, on the fourteenth day of April, giving the care of public buildings to the street commissioner, did not repeal that portion of section 65 of the district court act, passed the day prior, providing that the corporation should furnish attendants. The two acts do not conflict. The duties of a court janitor are of a different character from that of a person having care of public buildings.

Plaintiff rendered services in keeping clean the rooms of the court, attending to the personal wants of the judge, and in taking care of the property of the court. The distinction between the duties of a janitor of a court and a janitor having care of a public building, is well drawn by DANIELS, J., in the case of *Bergen* agt. *The Mayor* (12 *N. Y. S. C. R.*, 243). He says: " In support of the position taken, it was maintained that the power to appoint the janitor was possessed by the commissioner of public works, because the law gave him the care of public buildings. The duties of the janitor were to sweep and clean the rooms used for the purposes of the court, take care of the books, lock them up, carry messages, and attend to all the directions of the justices and clerks. They were not incidental to the care of the buildings, but essential to the cleanliness, security and convenience of the court rooms. The necessity for their performance was created by the existence and sessions of the court, and the proper transmission of its orders and directions. The entire services required to be performed were incidental to the court, and not to the mere care of the building in which it was held. Without its occupancy a janitor would be need-- less, but with its use as a court he would become one of its necessary attendants, and that seems to have been the view entertained of the employment by judge FOLGER, who delivered the opinion of the court of appeals, in the case of *Sullivan* agt. *The Mayor*, &c. (47 *How.*, 491). Statutes enacted at the same session of the legislature should receive a construction, if possible, which will give effect to each; each is supposed to speak the mind of the legislature, and the words used in

each should be restricted so as to give effect to every other act passed at the same session (*Smith* agt. *The People*, 47 *N. Y.*, 330). It can hardly be presumed that the legislature intended to repeal an act passed fourteen days previous, and if they had such intentions, they would probably have said so in some appropriate language" (*Power* agt. *Shepard*, 48 *N. Y.*, 540, 542).

III. Counsel for defendants requested the court to direct the jury to find a verdict for plaintiff at the rate of $100 per month, his compensation having been reduced from $125 per month to that sum, by resolution of the board of apportionment, adopted December, 1873, which power, it was claimed, was conferred by section 97 of the charter of 1873 (*chap.* 335). This request was denied, and exception taken.

The court was right in so ruling. The section gave power over the salaries of officers only; a janitor of a court is not an officer (*Sullivan* agt. *The Mayor*, 47 *How.*, 491). And the section applies only to city officers (*Sullivan* agt. *The Mayor*, 48 *How.*, 238; *Landon* agt. *The Mayor*, 49 *How.*, 218; *Quin* agt. *The Mayor*, 44 *How.*, 266; 53 *N. Y.*, 627; *Whitmore* agt. *The Mayor*, 12 *S. C. R.*, 195; *Douglas Taylor* agt. *The Mayor, not reported*).

IV. The plaintiff was employed pursuant to authority or direction by the corporation, and it is not an equitable defense for the same corporation, when suit is brought to recover payment for services rendered, to allege that it did what it had no right or power to do (*Parrish* agt. *Wheeler*, 22 *N. Y.*, 499; *Whitney Arms Co.* agt. *Barlow, court of appeals, not reported*).

V. There should be judgment for the plaintiff for $655.55, as found by the jury.

*Wm. C. Whitney*, for appellant.

I. The justice of the district court had no power to employ or appoint the plaintiff janitor of his court room.

1. By the act, chapter 344, Laws of 1857, section 65, page

724, it is enacted: " The corporation of the city of New York shall furnish, at the expense of the city of New York, all necessary attendants, rooms, furniture, blanks, stationery and fuel for these courts."

The legislature thus invested the corporation with the power and duty to provide room, fuel, light, attendants, &c., for the district court, through the proper executive department.

In distributing the powers and functions of the executive department, the charters of 1857, 1870 and 1873 successively provide that the power and duty of caring for buildings used for public purposes, shall reside in the street department or the department of public works (*vide, sec.* 71, *ch.* 335, *Laws* 1873; *vide, sec.* 78, *ch.* 137, *Laws* 1870; *vide, sec.* 23, *ch.* 446, *Laws* 1857).

2. The resolution of the common council of March 16, 1870, empowering the civil justices to appoint janitors, is invalid.

The common council could not thus divest the corporation of the public trust devolved upon it by the legislature.

Public powers or trusts devolved by law upon a municipal corporation, or upon its governing body, cannot be delegated to others (*Thompson* agt. *Schermerhorn*, 6 *N. Y. Rep.*, 92; *S. C.*, 9 *Barbour*, 152; *Smith* agt. *Morse*, 2 *Cal.*, 524; *Oakland* agt. *Carpenter*, 13 *Cal.*, 540; *Whyte* agt. *Nashville*, 2 *Swan*, 364; *East St. Louis* agt. *Wehrung*, 50 *Ill.*, 28; *State* agt. *Jersey City*, 1 *Dutch.*, 309; *Dillon on Mun. Corp.*, sec. 60; *Hartman* agt. *The Mayor, Common Pleas, Gen. Term, May*, 1875).

II. The salary of the plaintiff was subject to be fixed by the board of apportionment.

1. It is well established that compensation for public services may be increased or diminished at the will of the legislature (*Conner* agt. *The Mayor*, 1 *Selden*, 285).

It follows, from the plenary power of the legislature over the subject of compensation for public service, that it may

direct the manner in which salaries for such service shall be fixed, and designate and empower agents to fix the same.

2. By the charter (*ch.* 335, *Laws* 1873, *sec.* 97) it is provided : " The salaries of all officers paid from the city treasury, whose offices now exist, but are not embraced in any department, shall be fixed by the board of apportionment."

3. The plaintiff is not included in any of the " departments " of the city government, defined in the act; his salary is payable from the city treasury ; his office existed when the charter was enacted.    He is therefore comprehended within the letter and the spirit of the statute.

The board of apportionment fixed his salary at $1,200 per annum, from and after the 1st January, 1874.

It follows, therefore, that since 1st January, 1874, the salary of the plaintiff has been only $1,200 per annum.

The judgment should be reversed; or, if not reversed, reduced to $400 and interest.

DAVIS, *P. J.* — The plaintiff, in this action, was employed as a janitor by one of the justices of the civil district courts of the city.    His work, as described by himself in his testimony, was to keep the court rooms clean, make fires, go on errands for the justice, take care of the property of the court, furniture, stationery, &c., and lock and unlock the court rooms.

He had been paid for his services by the defendant up to the 1st of January, 1875, at the rate of $1,500 a year, and subsequently to that time for the months of January, February, March, April and May, at the rate of $1,200 a year, which he received under protest.    He claimed there was due him for services up to October 1, 1875, the sum of $675, for which sum he brought this action.

By section 65, chapter 334 of the Laws of 1857, it is enacted, that the corporation of the city of New York shall furnish, at the expense of the city, all necessary attendance, fuel, lights, furniture, &c., for the district courts.

By resolution of the common council, approved March 16, 1870, it was resolved: "That the justices assigned to each of the police courts of this city, and the justices of the several district civil courts, be, and they are hereby authorized and empowered to appoint a janitor of each of said police and civil courts, at the annual salary of $1,500, payable monthly."

It was under this authority that the civil justices appointed the plaintiff. The first point made is, that the district court had no power to employ or appoint the plaintiff the janitor of his court room, because the legislature had conferred that power upon the corporation of the city of New York, and the corporation could not devolve it upon the civil justice. We do not think this position well taken. The plaintiff, as a janitor, was not a public officer, but a mere employe or servant. His duties were servile in their character.

The duty imposed by the legislature on the corporation, in respect to his employment, was executive and ministerial, and could, we think, be exercised as well through the authority given to the civil justices, as by a direct employment by the common council itself.

No provision for the form of commissioning or employing the janitor was prescribed by the statute, and so long as the purposes of the act were accomplished, it seems to us of no legal importance how the corporation performed the duty.

The distinction between such a janitor and one having care of public buildings under the commissioner of public works, is pointed out by DANIELS, justice, in *Bergen* agt. *The Mayor* (12 *N. Y. S. C. R.*, 243), and the objection taken on the trial, that under the charter the commissioner of public works had the sole exclusive power of employing janitors, is disposed of by that case.

As the plaintiff was in no sense a public officer, but a mere servant or employe, the provision of the charter (*chap.* 335 *of* 1873, *sec.* 97), by which it is provided that the salaries of all officers paid from the city treasury, whose offices now exist, but are not embraced in any department, shall be fixed

McCullough agt. Mayor.

by the "board of apportionment," does not apply to his case. That provision applies and was intended to apply to public officials of the city coming within its description, and does not extend to the compensation to be paid to mere employes or servants (*Sullivan* agt. *The Mayor*, 47 *How.*, 491; *Quinn* agt. *The Mayor*, 53 *N. Y.*, 627; *Whittemore* agt. *The Mayor*, 12 *N. Y. S. C. R.*; 195).

The compensation the plaintiff received was subject to change at any time by the common council, who might reduce its amount for services *in futuro* to such sum as that body deemed proper, and if the plaintiff, after such reduction, rendered services, they would, of course, be under an implied agreement to perform them for the reduced compensation.

The common council could also discharge him altogether, and abolish the place, and confer its duties upon any other servant or employe; but while the resolution above cited remained in full force, and the plaintiff faithfully rendered the service under his employment by the civil justice, he was entitled to the compensation fixed by the resolution.

Motion for new trial denied, and judgment ordered for the plaintiff upon the verdict.